WRIGHT, FINLAY & ZAK, LLP
Darren T. Brenner, Esq.
Nevada Bar No. 8386
Lindsay D. Robbins, Esq.
Nevada Bar No. 13474
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
(702) 637-2345; Fax: (702) 946-1345
dbrenner@wrightlegal.net
lrobbins@wrightlegal.net
*Attorneys for Plaintiff, U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, Mortgage Pass-Through Certificates, Series 2007-BNC1*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-BNC1, MORTGAGE PASS-THROGH CERTIFICATES, SERIES 2007-BNC1, | Case No.: 2:20-cv-02079-RFB-DJA |
| Plaintiff, | **STIPULATION AND ORDER TO FILE AMENDED COMPLAINT [ECF No. 1-1]** |
| vs. | |
| FIDELITY NATIONAL TITLE GROUP, INC.; FIDELITY NATIONAL TITLE INSURANCE COMPANY; DOE INDIVIDUALS I through X; and ROE CORPORATIONS XI through XX, inclusive, | |
| Defendant. | |

COMES NOW Plaintiff, U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, Mortgage Pass-Through Certificates, Series 2007-BNC1 ("US Bank") and Defendants Fidelity National Title Group, Inc. ("Fidelity") and Fidelity National Title Insurance Company ("FNTIC") (collectively "Defendants"), by and through their counsel of record, hereby stipulate and agree as follows:

1. On October 16, 2020, US Bank filed its Complaint in Eighth Judicial District Court, Case No. A-20-823189-C [ECF No. 1-1];

2. On November 12, 2020, Defendants filed a Petition for Removal to this Court [ECF No. 1];

3. In responding to FNTIC's Motion to Dismiss, U.S. Bank discovered that the incorrect Covenants, Conditions, and Restrictions (CC&Rs) were attached to the Complaint at the time of filing;

4. U.S. Bank also discovered that while the original lender was correctly identified in paragraph 11, it was incorrectly identified in paragraph 63;

5. These are ministerial amendments to correct the exhibits to the Complaint and a typographical error and they will not impact any pending dispositive motions;

6. The proposed Amended Complaint is attached hereto as Exhibit A;

7. Counsel for Defendants does not oppose amending the Complaint.

**IT IS SO STIPULATED.**

| DATED this 5th day of January, 2021. | DATED this 5th day of January, 2021. |
|---|---|
| WRIGHT, FINLAY & ZAK, LLP | SINCLAIR BRAUN LLP |
| */s/ Lindsay D. Robbins*<br>Darren T. Brenner, Esq.<br>Nevada Bar No. 8386<br>Lindsay D. Robbins, Esq.<br>Nevada Bar No. 13474<br>7785 W. Sahara Ave., Suite 200<br>Las Vegas, NV 89117<br>*Attorneys for Plaintiff, U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, Mortgage Pass-Through Certificates, Series 2007-BNC1* | */s/ Kevin S. Sinclair*<br>Kevin S. Sinclair, Esq.<br>Nevada Bar No. 12277<br>16501 Ventura Boulevard, Suite 400<br>Encino, California 91436<br>*Attorney for Defendants, Fidelity National Title Group, Inc. and Fidelity National Title Insurance Company* |

**IT IS SO ORDERED.**

Dated this _7th_ day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A

Proposed Amended Complaint

1
2   WRIGHT, FINLAY & ZAK, LLP
    Darren T. Brenner, Esq.
3   Nevada Bar No. 8386
    Lindsay D. Robbins, Esq.
4   Nevada Bar No. 13474
    7785 W. Sahara Ave., Suite 200
5   Las Vegas, NV 89117
    (702) 637-2345; Fax: (702) 946-1345
6   lrobbins@wrightlegal.net
7   *Attorneys for Plaintiff, U.S. Bank National Association, as Trustee for Structured Asset
    Securities Corporation Mortgage Loan Trust 2007-BNC1, Mortgage Pass-Through Certificates,*
8   *Series 2007-BNC1*

### UNITED STATES DISTRICT COURT
9   ### DISTRICT OF NEVADA

10

| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-BNC1, MORTGAGE PASS-THROGH CERTIFICATES, SERIES 2007-BNC1, | Case No.: 2:20-cv-02079-RFB-DJA |
|---|---|
| Plaintiff, | **AMENDED COMPLAINT [PROPOSED]** |
| vs. | **ARBITRATION EXEMPT: ACTION FOR DECLARATORY RELIEF** |
| FIDELITY NATIONAL TITLE GROUP, INC.; FIDELITY NATIONAL TITLE INSURANCE COMPANY; DOE INDIVIDUALS I through X; and ROE CORPORATIONS XI through XX, inclusive, | |
| Defendants. | |

20
21          Plaintiff U.S. Bank National Association, as Trustee for Structured Asset Securities
22   Corporation Mortgage Loan Trust 2007-BNC1, Mortgage Pass-Through Certificates, Series
23   2007-BNC1 ("U.S. Bank Trustee"), by and through its attorneys of record, Darren T. Brenner,
24   Esq. and Lindsay D. Robbins, Esq., of the law firm of Wright, Finlay & Zak, LLP, submits its
25   Complaint against Fidelity National Title Group, Inc. ("Fidelity"), Fidelity's wholly owned
26   subsidiary, Fidelity National Title Insurance Company ("FNTIC"), Doe Individuals I through X
27   ("Does") and Roe Corporations XI through XX, inclusive ("Roes") (collectively,
28

"Defendants"), for breach of their obligations to defend and indemnify U.S. Bank Trustee under a title insurance policy issued to insure a deed of trust on real property located in Nevada.

Title insurers, like Fidelity and FNTIC, have known since the early 1990's that homeowners associations in some states, including Nevada, impose liens that can attain superpriority over senior mortgages and deeds of trust. Title insurers are the experts on title, and lenders like U.S. Bank Trustee rely upon and pay them handsomely for their expertise and protection.

Title insurers, like Fidelity and FNTIC, have acknowledged the coverage that U.S. Bank Trustee claims is due and owing in their manuals. These insurers themselves developed the trade usage describing the endorsements at issue in this case as providing coverage to an insured lender for losses caused by the enforcement of an association's superpriority lien.

Fidelity and FNTIC's coverage position in this specific case is directly at odds with the trade usage they developed globally. This factual background must be considered when interpreting the title insurance contract drafted and issued by the insurers to U.S. Bank Trustee's predecessor-in-interest.

### Parties, Jurisdiction and Venue

1.      Plaintiff U.S. Bank Trustee is a national banking association as that term is defined in the National Bank Act. U.S. Bank Trustee has its main office in California and doing business in Clark County, Nevada.

2.      Defendant Fidelity is a Delaware corporation with its principal place of business in Florida and doing business in Clark County, Nevada. Fidelity is a wholly owned subsidiary of FNTG Holdings, LLC, a Delaware limited liability company. FNTG Holdings is a 100% wholly owned subsidiary of Fidelity National Financial, Inc., a Delaware corporation that is publicly traded on the New York Stock Exchange under the ticker symbol "FNF."

3.      Defendant FNTIC is a Nebraska corporation with its principal place of business in Florida and doing business in Clark County, Nevada. FNTIC is a wholly owned subsidiary of Fidelity.

///

4.   U.S. Bank Trustee does not know the true names, capacities or bases of liability of fictitious defendants sued as Does I through X and Roe Corporations XI through XX, inclusive (collectively "fictitious Defendants").  Each fictitiously named defendant is in some way liable to U.S. Bank Trustee.  U.S. Bank Trustee will amend this Complaint to reflect the true names of said defendants when the same have been ascertained.

5.   This matter is exempt from Arbitration as U.S. Bank Trustee has requested a declaration that the Policy provided coverage for all losses or damages, up to the Amount of Insurance, sustained by U.S. Bank Trustee as a result of the HOA's foreclosure sale.

6.   This Court has personal jurisdiction over Defendants because they have engaged in the business of issuing title insurance policies insuring deeds of trust on land located in the State of Nevada and therefore have sufficient contacts with the State to have availed themselves of the State's jurisdiction.

7.   This Court has personal jurisdiction over Fidelity because it has purposefully availed itself of this forum by intentionally directing its subsidiaries to tortiously deny coverage under the insurance policies described below and by making or facilitating the coverage decisions of FNTIC regarding thousands of claims upon policies affecting insured interests on real property located in Nevada.

8.   Venue is appropriate in this Court because this judicial district is where a substantial part of the events giving rise to U.S. Bank Trustee's claims took place, and it is the location of the property subject to the insured deed of trust that is at the core of this lawsuit.

### *Nature of Title Insurance*

9.   A title insurance policy is a contract through which the insurer is paid one sum in consideration for agreeing to indemnify the insured up to a specified amount against loss caused by encumbrances upon or defects in the title to real property in which the insured has an interest.

10.   Lenders such as U.S. Bank Trustee often seek to obtain title insurance policies in connection with loans they advance that are secured by interests in real property. The title

insurance policy generally protects the lender against risks associated with loss of title or practical use of the property, subject to the policy's terms, exclusions, and conditions.

11. This lawsuit concerns the issuance of a title insurance policy in favor of the original lender, "BNC Mortgage, Inc., its successors and/or assigns."[1] U.S. Bank Trustee is the insured entity under the policy.

12. Before 2014, FNTIC, and other companies owned by Fidelity, issued to U.S. Bank Trustee (or U.S. Bank Trustee's predecessors-in-interest) a number of title insurance policies.

13. The large majority of insurance policies issued by FNTIC's issuing agents use standard forms promulgated by the American Land Title Association ("ALTA") and the California Land Title Association ("CLTA").

14. ALTA and CLTA are trade groups made up of representatives from the major title insurance underwriters and issuers, including FNTIC.

15. These standard ALTA and CLTA forms are used by multiple title insurers, which publish guides concerning the coverage (and exceptions thereto) provided by the standard policy. The standard ALTA policy form has been revised from time to time, including changes in 1992, 2006, and 2012.

16. There are a number of ALTA standardized endorsement forms that can be issued with the standard policy to modify the scope of coverage available. Defendants have also used CLTA standardized endorsement forms from time to time.

17. Non-party, Chicago Title Insurance Company, another underwriter owned by Fidelity, issued a 2013 Endorsement Manual which states that "endorsements will provide additional coverage for matters which would ordinarily be excluded by the Exclusions From Coverage, or excepted from coverage shown in Schedule B of" a title insurance policy.[2]

18. This is consistent with trade usage of the term "endorsement" among title insurers and their insureds. *See, e.g.*, Joyce D. Palomar, *Title Insurance Law* § 9:1 (2013-14

---

[1] A true and correct copy of the Title Insurance Policy is attached as **Exhibit 1**. *See id.* at p. 5, Schedule A.

[2] A true and correct copy of Chicago Title's 2013 Endorsement Manual is attached as **Exhibit 2**.

ed.) (explaining that endorsements serve two primary purposes: (1) "they may provide affirmative coverage for facts that exist in a transaction which standard title insurance policies have not traditionally addressed," or (2) they "may 'insure over' or modify the effect of preprinted policy exclusions or exceptions").

19. Lenders commonly request that title insurers issue ALTA Endorsement Form 9 ("Form 9"), or its CLTA equivalent, CLTA Endorsement Form 100.2 ("Form 100.2"). These "comprehensive" endorsements provide a range of guarantees to the insured relating to the existence of covenants, conditions, or restrictions affecting or governing the property which could cause damage to the insured lender's interest at the time the policy is issued or in the future.

20. Form 100.2 is the equivalent of Form 9.[3]

21. It is commonly understood between title insurers and their insureds that Form 9/Form 100.2 "[p]rovides comprehensive coverage for [an] insured ALTA lender against loss by reason of present *or future* [covenants, conditions and restrictions] violations[.]"[4]

22. Lenders often also request that title insurers issue ALTA Endorsement Form 5 ("Form 5"), or its CLTA equivalent, CLTA Endorsement Form 115.2 ("Form 115.2"). Form 5/Form 115.2 endorsements "[p]rovide[] coverage for an insured ALTA lender against loss concerning violations of CC&Rs [and/or] homeowners association charges and assessments."[5]

23. Form 5 is the equivalent to Form 115.2.[6]

24. Fidelity exerts control over its subsidiaries, including FNTIC, by determining the terms and conditions upon which they will insure title to real property, dictating policies and procedures that govern how they will evaluate claims, and directing them to deny certain categories of claims.

---

[3] *See id.* at 3.

[4] A true and correct copy of Fidelity's Endorsement Guide is attached as **Exhibit 3** (emphasis added).

[5] *Id.*

[6] **Exhibit 2** at 3.

25.     Fidelity's Claims Department is based out of two locations in Omaha, Nebraska and Jacksonville, Florida.   The Claims Department processes claims submitted under title insurance policies underwritten by all of Fidelity's wholly owned subsidiaries, including FNTIC.  To promote consistent coverage positions among its subsidiaries, Fidelity provides its Claims Department with instructions and other claims handling guidance, including directives as to which position the subsidiaries should take as to coverage on a claim.

### *FNTIC Issued Policies Understood to Cover Nevada Superpriority Liens*

26.     In 1982, the Uniform Law Commission promulgated the Uniform Common Interest Ownership Act ("UCIOA"). UCIOA provided a number of standardized terms governing the formation of common interest associations, including condominium associations and homeowners associations.

27.     As relevant here, UCIOA provided that homeowners associations' covenants, conditions, and restrictions included a "superpriority" lien for unpaid assessments, which came into existence when the association was formed (i.e., when its declaration of covenants, conditions, and restrictions were recorded), and would take priority over a subsequently recorded mortgage or deed of trust even if no assessments were due at the time the mortgage or deed of trust was recorded.

28.     In 1991, the Nevada Legislature adopted the 1982 version of UCIOA, codifying it in Chapter 116 of the Nevada Revised Statutes.

29.     Chapter 116 includes NRS 116.3116, which, at the time of the events relevant to this suit, stated in relevant part:

> 1.   The association has a lien on a unit for any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due. . . .
>
> 2.   A lien under this section is prior to all other liens and encumbrances on a unit except:
> . . .
> (b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . . ;
> . . .

The lien is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . .

. . .

4. Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required.

30.     Under NRS 116.3116, from the time an association's covenants, conditions, and restrictions are recorded, the properties governed by the association are encumbered by a lien that secures all assessments.  Chapter 116 does not require that an association record a separate lien before the lien is foreclosed.

31.     As part of its adoption of UCIOA, the Nevada Legislature also enacted NRS 116.1104:

Except as expressly provided in this chapter, [NRS 116's] provisions may not be varied by agreement, and rights conferred by it may not be waived. Except as otherwise provided in paragraph (b) of subsection 2 of NRS 116.12075, a declarant may not act under a power of attorney, or use any other device, to evade the limitations or prohibitions of this chapter or the declaration.

32.     The Nevada Legislature also enacted NRS 116.1206(1):

Any provision contained in a declaration, bylaw or other governing document of a common-interest community that violates the provisions of this chapter shall be deemed to conform with those provisions by operation of law, and any such declaration, bylaw or other governing document is not required to be amended to conform to those provisions.

33.     Defendants and other title insurers were aware of Nevada's adoption of NRS 116, including its provision of a "superpriority" lien in a homeowners association's covenants, conditions, and restrictions.

34.     Defendants and other title insurers believed they could be liable for an insured's losses caused by the enforcement of an association's superpriority lien if the policy at issue contained in Form 9/Form 100.2 and/or Form 5/Form 115.2.

35.   On information and belief, between 1991 and 2014, Fidelity and FNTIC provided instructions to their issuing agents to modify Form 9/Form 100.2 and Form 5/Form 115.2 before issuing any policy in Nevada for a property governed by a homeowners association in recognition of the coverage provided under these forms.

36.   In 2007, non-party LandAmerica Financial Group, Inc. issued to its subsidiaries, subsidiaries which have since been acquired by Fidelity, an Underwriting Manual which quotes Paragraph 1(a) of Form 9 and provides the following underwriting guidelines for issuing a policy with Form 9:[7]

> 1.   Any incorrectness in the assurance that, at Date of Policy:
>
>    a)   There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
>
> To give this coverage, the underwriter must review all covenants, conditions and restriction listed in the title report to determine if there is language which could result in forfeiture, reversion or other impairment. Note that other impairment is added to traditional forfeiture or reversion. This includes a provision permitting a home owners or civic association to levy an assessment, secured by a lien with priority over the insured deed of trust. Under the Property Owners Association Act, 55-508, et seq., some owners associations can levy for limited purposes, with limited super-priority.

37.   Fidelity and FNTIC have published and/or follow similar underwriting manuals and instructions indicating that Paragraph 1(a) of Form 9/Form 100.2 provides coverage for losses due to "provision[s] [in recorded covenants, conditions and restrictions] permitting a home owners or civic association to levy an assessment, secured by a lien with priority over the insured deed of trust."

38.   From 1991 until the present, Fidelity and FNTIC have provided endorsement manuals for their issuing agents, including Fidelity Nevada, explaining the scope of coverage provided by Form 9/Form 100.2 and Form 5/Form 115.2.

39.   On information and belief, FNTIC and Fidelity's pre-2012 endorsement manuals informed their issuing agents that Form 9/Form 100.2 and Form 5/Form 115.2 would provide

---

[7] A true and correct copy of LandAmerica's Underwriting Manual is attached as **Exhibit 4**.

coverage to an insured that suffered loss or damage due to an association's lien for assessments that became delinquent after the date of policy.

40.     Even after the amendments to Form 9/Form 100.2 and Form 5/Form 115.2, however, FNTIC and Fidelity have promulgated endorsement manuals indicating that the operative language in earlier versions of the forms – including the earlier version of Form 100.2 and Form 115.2 at issue in this case – would provide coverage to an insured for losses or damages suffered as a result of the enforcement of an association's superpriority lien.

41.     In the 2013 Endorsement Manual that Fidelity provided for the use of all of its subsidiary underwriters and their agents, Fidelity explained that certain language from Form 9/Form 100 should not be used in policies where "a FUTURE violation might result in the loss of priority or enforceability of the lien of the Insured Mortgage," indicating Fidelity's belief that the language created coverage for the insured.[8]

42.     Similarly, Fidelity's 2013 Endorsement Manual states that Form 5/Form 115.2 insures against "loss from lack of priority of the mortgage lien over the lien for homeowners' association assessments."[9] The Manual states that Form 5 insures priority over FUTURE assessments; whereas Form 5.1 only insures against loss resulting from assessments due and unpaid at date of policy.[10]

43.     Contemporary trade usage describing the terms and scope of Form 9/Form 100.2 indicates that those endorsements provide coverage for an insured lender in the event that covenants, conditions, and restrictions of record at the date of the policy allow an association's lien to take priority over the insured mortgage or deed of trust.  *See, e.g.*, Barlow Burke, LAW OF TITLE INSURANCE § 10.05[B] (3d ed., 2002 Supp.) (in describing Form 9: "A second type of endorsement of interest to an insured lender is one covering the loss of lien priority because of the enforcement of a private covenant applicable to the title. … The priority of these covenants, restrictions, and conditions is particularly important to mortgage lenders with loan policies

---

[8] A true and correct copy of Fidelity's 2013 Endorsement Manual is attached as **Exhibit 5**. *Id.* at 66.

[9] *Id.* at 18, 39.

[10] *Id.* at 39.

because their supporting documents, also recorded, typically include the power to compel the payment of amounts for the maintenance and repair of the common facilities in a large subdivision. Often the exercise of these maintenance and repair functions is put in the hands of a subdivision homeowner's association. It also typically holds a lien to compel the payment of these amounts, and that lien also has priority over later recorded mortgage."); *id.* ("Future violations [of covenants, conditions, and restrictions] are also insured against, but only to the extent that the violations occur between the policy date and the acquisition of title in any foreclosure action, provided the violation causes the insured to be insecure or results in loss or damage to the title acquired by the insured in satisfaction of the secured debt, as where the insured takes a deed in lieu of foreclosure." (citing ALTA Form 9 ¶¶ 1(a), 2)).

44.     Defendants represented to the public and to U.S. Bank Trustee's predecessor-in-interest that Form 9/Form 100.2 and Form 5/Form 115.2 provided coverage against losses caused by an association's superpriority lien.

45.     Despite having actual knowledge of the possibility that U.S. Bank Trustee could lose its security interest in properties that were governed by homeowners associations, at no time did Defendants inform U.S. Bank Trustee or its predecessors-in-interest of the danger of losing its security interests in such properties.

46.     Defendants implemented patterns and practices which call for the denial of claims stemming from Nevada HOA foreclosure sales despite Defendants' actual knowledge that the claims fell under the insuring provisions and policy endorsements.

### *The Nevada Supreme Court Interprets NRS 116.3116*

47.     In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 334 P.3d 408 (2014), the Nevada Supreme Court confirmed that a portion of the lien included in a Nevada homeowners association's covenants, conditions, and restrictions has superpriority over a recorded first deed of trust.

48.     The Court further held that NRS 116.1104 rendered inoperative clauses in associations' covenants, conditions, and restrictions that purported to allow senior deeds of trust

to survive an association's foreclosure of the superpriority lien provided in its covenants, conditions, and restrictions.

49. *SFR Investments* confirmed that the proper foreclosure of an association's superpriority lien extinguishes a recorded senior deed of trust on the same property.

50. Following *SFR Investments*, non-party Stewart Title Guaranty Company ("Stewart Title") issued a bulletin to its agents in Nevada indicating that "in lieu of issuing a[] [Form 9] for a lender's policy," its agents should "issue the ALTA 9.10."[11] Additionally, the underwriters were also instructed that "in lieu of issuing an ALTA 5 for a lender's policy" to issue the ALTA 5.1 instead."[12]

51. Other title insurance companies have issued similar bulletins as a result of the decision in *SFR Investments*.

52. Upon information and belief, Fidelity and FNTIC sent similar bulletins to their agents following *SFR Investments*, indicating their belief that Form 9/Form 100 and Form 5/Form 115.2 provided coverage for losses caused by superpriority liens.

53. In *K&P Homes v. Christiana Trust*, 133 Nev. 364, 398 P.3d 292 (2017), the Nevada Supreme Court held that *SFR Investments* "did not create new law or overrule existing precedent; rather, that decision declared what NRS 116.3116 has required since the statute's inception" in 1991.

54. Under controlling Nevada law, the covenants, conditions, and restrictions at issue here have provided the association with a lien that could attain priority over a senior deed of trust since 1991.

### *Facts Specific to this Case*

55. This action concerns real property located at 5404 Singing Hills Drive, Las Vegas, Nevada 89130, APN 125-36-113-002 ("Property").

---

[11] A true and correct copy of Stewart Title Bulletin NV2014002 is attached as **Exhibit 6**.
[12] *Id.*

56.     The Property is subject to the Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") for Los Prados Homeowners Association ("HOA").[13]

57.     The CC&Rs, including Article VI, Section 1, creates the HOA's lien and establishes that the owners of properties governed by the HOA "covenant and agree to pay" all annual and special assessments.[14]

58.     Additionally, the Declaration recitals establish the HOA's intent that the covenants in the CC&RS are to run with the land:

> NOW, THEREFORE, Declarant hereby declares that all of the properties described above shall be held, sold, conveyed, hypothecated, encumbered, leased, rented, used, occupied, and improved subject to the following easements, restrictions, covenants, and conditions which shall run with the land and be binding on all parties having or acquired any right, title or interest in the above-described properties or any part thereof, and shall be for the benefit of each owner of any portion of he properties, or any interest therein, their heirs, successors, and assigns, and shall insure to the benefit of and be binding upon each successor in interest or the owners thereof.[15]

59.     Moreover, Article VI, Section 1 of the CC&Rs specifically states that the covenant to pay assessments is to run with the land and operate as a continuing lien on the Property.

60.     Thus, pursuant to the CC&Rs, an owner of property governed by the HOA covenants to pay assessments, and those assessments constitute a charge on the land secured by a continuing lien that has encumbered the property since the CC&Rs were recorded.

61.     The CC&Rs are deemed to "conform" and incorporate NRS 116.3116 by operation of law.  *See* NRS 116.1206(1) ("Any provision contained in a declaration, bylaw or other governing document of a common-interest community that violates the provisions of this chapter shall be deemed to conform with those provisions by operation of law, and any such declaration, bylaw or other governing document is not required to be amended to conform to those provisions.").

---

[13] A true and correct copy of the recorded HOA's CC&Rs are attached as **Exhibit 7A,** and a true and correct copy of the unrecorded CC&Rs are attached as **Exhibit 7B**.
[14] *Id*. at 9.
[15] *Id*. at 2.

62. Thus, the CC&Rs provided the HOA with a superpriority lien over the lien of the insured mortgage as of the Date of Policy.

63. On May 25, 2007, BNC Mortgage, Inc. ("Lender") provided a $344,250.00 loan to Salvatore A. Moncada and Mary M. Moncada ("Borrowers") to finance the purchase of the Property.

64. By purchasing the Property, Borrowers covenanted "to pay to [the HOA] annual assessments or charges[.]"

65. On May 25, 2007, Borrowers executed a deed of trust ("Deed of Trust"), providing a security interest in the Property in favor of Lender.[16]

66. The Deed of Trust was subsequently assigned to U.S. Bank Trustee.[17]

67. As part of the loan origination, FNTIC entered into a contractual relationship with Lender as the insured on a lender's title insurance policy, numbered 27-107-1398394-01 ("Policy"), to insure that the Deed of Trust was superior to competing liens, including the HOA's lien.[18]

68. Defendants are responsible for providing coverage that insured the Deed of Trust in first position over all other liens, and other representations contained in the Policy.

69. The Policy obligates the Insurer to pay the costs, attorneys' fees, and expenses incurred in defense of the title or the lien of the Deed of Trust, as insured.[19]

70. The Policy includes a standard endorsement Form 100.2.[20]

71. Pursuant to Form 100.2, the Insurer promised to insure Lender and its successors:

against loss or damage sustained by reason of:

1. The existence at Date of Policy of any of the following:

---

[16] A true and correct copy of the recorded Deed of Trust is attached as **Exhibit 8**.
[17] A true and correct copy of the recorded Corrective Assignment of Deed of Trust is attached as **Exhibit 9**.
[18] *See* **Ex. 1** (Title Policy) at 5.
[19] *Id.* at 1.
[20] *See id.* at 6, Form 100.2.

       (a)     Covenants, conditions, or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

…

2.     Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the Insured, provided the violation results in:

       (a)     Invalidity, loss of priority, or unenforceability of the lien of the insured mortgage[.]

72.     The Policy also includes a standard endorsement Form 115.2.[21]

73.     Pursuant to Form 115.2, FNTIC promised to insure Lender and its successors:

against loss or damage sustained by reason of:

. . .

2.     The priority of any lien for charges and assessments at Date of Policy in favor of any association of homeowners which are provided for in any document referred to in Schedule B over the lien of any insured mortgage identified in Schedule A.

74.     At the time it provided the Policy to Lender, FNTIC was aware of the HOA's CC&Rs, the HOA's lien for unpaid assessments, and the fact that the lien could take priority over the Deed of Trust pursuant to NRS Chapter 116.

75.     In or around 2011, Borrowers ceased making payments to the HOA for monthly assessments, in violation of their covenant under Article VI, Section 1 of the CC&Rs.

76.     On March 16, 2011, the HOA, through its agent Nevada Association Services, Inc. ("NAS"), recorded a Notice of Delinquent Assessment Lien against the Property ("Notice of Delinquency").[22]  The Notice of Delinquency states that it is being given "in accordance with" Nevada Revised Statutes and the CC&Rs.[23]

77.     On May 9, 2011, the HOA, through its agent NAS, recorded a Notice of Default and Election to Sell Under Homeowners Association Lien against the Property.[24]

---

[21] *See id.* at 10, Form 115.2.

[22] A true and correct copy of the Notice of Delinquent Assessment Lien is attached as **Exhibit 10**.

[23] *See id.*

[24] A true and correct copy of the Notice of Default is attached as **Exhibit 11**.

78.     On April 5, 2013, the HOA, through its agent NAS, recorded a Notice of Foreclosure Sale against the Property.[25] The Notice states that the sale will be conducted "under the power of sale pursuant to" the HOA's CC&Rs.[26]

79.     On April 26, 2013, the HOA sold the Property at foreclosure, conveying it to SFR Investments Pool 1, LLC ("SFR") in exchange for payment of $19,000.00 ("HOA Sale").[27] The Foreclosure Deed confirms that the Property was conveyed to SFR "pursuant to  powers conferred" by NRS Chapter 116 and the HOA's CC&Rs.[28]

80.     On June 15, 2017, U.S. Bank Trustee filed a Complaint against SFR in the United States District Court, District of Nevada, Case No. 2:17-cv-01677, seeking a declaration that the Deed of Trust was not extinguished by the HOA Sale.[29] On July 24, 2017, SFR filed its Answer, Counterclaim and Cross-Claim, asserting that the HOA Sale extinguished the Deed of Trust ("Litigation").[30]

81.     The Litigation has resulted in a settlement under which U.S. Bank Trustee reconveyed its Deed of Trust.

82.     U.S. Bank Trustee has incurred significant attorneys' fees and costs defending its interest in the Property.

83.     As of the Date of Policy, there existed "[c]ovenants, conditions, or restrictions under which the [Deed of Trust] c[ould] be cut off, subordinated, or otherwise impaired,"[31] including the payment covenant contained in Article VI, Section 1 of the HOA's CC&Rs.

84.     The HOA Sale, conducted "pursuant to the powers conferred" by the HOA's CC&Rs, resulted in the purported extinguishment of the Deed of Trust.

85.     U.S. Bank Trustee has suffered losses or damages as a result of "future" (i.e., post-Date of Policy) "violation[s] on the land of" the HOA's CC&Rs – including Borrowers'

---

[25] A true and correct copy of the Notice of Foreclosure Sale is attached as **Exhibit 12**.
[26] *See id.*
[27] A true and correct copy of the Foreclosure Deed is attached as **Exhibit 13**.
[28] *Id.*
[29] A true and correct copy of the U.S. Bank's Complaint is attached as **Exhibit 14**.
[30] A true and correct copy of the SFR's Answer and Counterclaims is attached as **Exhibit 15**.
[31] *See* **Ex. 1** (Title Policy), at 10, Paragraph 1(a) of Form 100.2.

violation of their covenant to pay assessments[32] – which occurred prior to U.S. Bank Trustee's acquisition of title to the Property and resulted in the "invalidity, loss of priority, or unenforceability of the lien" of the Deed of Trust.[33]

86. Additionally, U.S. Bank Trustee has suffered loss or damage sustained by reason of the HOA's priority lien provided for in the HOA's CC&Rs over the Deed of Trust.

87. On or about October 2, 2014, prior to the Litigation, U.S. Bank Trustee submitted a claim under the Policy to FNTIC ("Claim").[34] In its Claim, U.S. Bank Trustee identified the Policy provisions that provided coverage for losses caused by the HOA's foreclosure of its purportedly senior lien and requested that FNTIC fulfill its obligations to defend U.S. Bank Trustee in the Litigation and indemnify U.S. Bank Trustee against losses.[35]

88. On October 17, 2014, Marcos A. Aguilar, Claims Counsel for FNTIC, sent U.S. Bank Trustee's counsel a letter indicating that FNTIC was denying coverage under the Policy.[36]

89. In its denial, FNTIC denied the Claim on the basis that "there is no current challenge to the validity or enforceability of the lien of the Insured DOT by formal litigation or otherwise[.]"[37]

90. FNTIC further contended that "[t]he HOA Lien was not recorded against the Property until March 16, 2011, more than three years after the Date of Policy…Consequently, both the assessments and the proceedings to enforce the HOA Lien were instituted after the Date of Policy. As all of the above-referenced matters related to this claim occurred after the Date of Policy, this claim does not fall within the initial insuring provisions of the Policy or the CLTA Form 100.2 Endorsement."[38]

91. FNTIC further contended that "[t]he CLTA Form 100.2 Endorsement provision…provides that it does not modify any of the terms and provisions of the Policy except

---

[32] *See* **Ex. 7** (CC&Rs), at 15.
[33] *See* **Ex. 1** (Title Policy), at 10, Paragraph 2(a) of Form 100.2.
[34] A true and correct copy of U.S. Bank Trustee's claim is attached as **Exhibit 16**.
[35] *Id.*
[36] A true and correct copy of FNTIC's denial letter is attached as **Exhibit 17**.
[37] *Id.* at 2.
[38] *Id.* at 3.

to the extent expressly stated. As this Endorsement does not expressly state that it is modifying Exclusion 3(d) of the Policy, this exclusion still applies[.]"[39]

92. Lastly, FNTIC contended that "the HOA Lien was assessed pursuant to the Covenants, Conditions and Restrictions affecting the Property and relating to the Los Prados declaration. As such, this claim is excepted from coverage under Schedule B Exception No. 2."[40]

93. FNTIC failed to analyze Form 115.2 in its denial.[41]

94. Nevada law and the CC&Rs establish that the HOA's priority lien arises upon the recording of the HOA's CC&Rs.

95. Because the CC&Rs were recorded prior to Date of Policy, the HOA had a priority lien at Date of Policy and Exclusion 3(d) does not apply.

96. Because the CC&Rs were recorded prior to Date of Policy and are identified in Schedule B, paragraph 2(a) of Form 100.2 extends coverage of the Claim.

97. The Foreclosure Deed stated the HOA's foreclosure sale was conducted "pursuant to the powers conferred" by NRS 116 and the HOA's CC&Rs.[42]

98. Schedule B Exception 2 and Exclusion 3(d) cannot be interpreted to remove coverage provided by Form 100.2 and Form 115.2. *See Nat'l Union Fire Ins. Co. of the State of Pa., Inc. v. Reno's Exec. Air, Inc.*, 100 Nev. 360, 365 (1984) ("Clauses providing coverage are broadly interpreted so as to afford the greatest possible coverage to the insured, [and] clauses excluding coverage are interpreted narrowly against the insurer.").

99. As stated above in Paragraph 25, Fidelity's Claims Department handles claims submitted to each of Fidelity's subsidiaries, including FNTIC. By managing the claims submitted to its subsidiaries, Fidelity effectively directs its subsidiaries' review of claims and its subsidiaries' coverage positions.

---

[39] *Id*.
[40] *Id*.
[41] *Id.*
[42] *See* **Ex. 13** (Foreclosure Deed).

100. On information and belief, Defendants developed specific coverage positions and claims handling guidance for claims related to Nevada association foreclosure sales.

101. Defendants implemented and engaged in patterns and practices which call for the denial of claims stemming from Nevada HOA foreclosure sales despite Defendants' actual knowledge that the claims fell under the insuring provisions and policy endorsements. These patterns and practices demonstrate that Defendants did not simply make a reasonable mistake, but engaged in a systemic and reckless and/or intentional practice of mishandling and denying otherwise valid claims in order to avoid their obligations.

102. On information and belief, the coverage positions as to such claims nominally taken by Defendants and its affiliates reflect the claims handling and coverage positions adopted by Fidelity.

103. On information and belief, Mr. Aguilar was employed by and acted at the direction of Fidelity in denying the claim submitted by U.S. Bank Trustee.

104. Because Defendants disregard their status as distinct organizations in the handling of claims, Defendants are alter egos for the purpose of liability related to issuance of the Policy and their handling of U.S. Bank Trustee's Claim.

105. Defendants are responsible for the acts and omissions related to the Policy because Defendants acted or failed to act at one another's direction. Additionally, because FNTIC entered into a contractual relationship with U.S. Bank Trustee's predecessor in interest to procure coverage of the priority of the Deed of Trust over the HOA's lien—to the extent coverage is not afforded under the Policy, FNTIC is an alter ego of Fidelity as a result of its failure to procure coverage as requested.

106. Because FNTIC breached its contract with U.S. Bank Trustee's predecessor-in-interest and made material representations to the Insured, FNTIC is an alter ego of Fidelity for the purpose of liability.

107. To the extent the Defendants are not alter-egos, Defendants were involved in a joint venture that subjects Fidelity and the other Defendants to liability equal to that of FNTIC. The individuals responsible for handling U.S. Bank Trustee's claim were/are employed by or

otherwise directed by Fidelity.  Fidelity has a vested pecuniary interest in the outcome of FNTIC's claim decisions.   Fidelity was further responsible for the development of FNTIC's claim-handling and/or underwriting practices, and for otherwise directing which policies were sold to whom and how claims were to be handled.

### FIRST CAUSE OF ACTION
**(Declaratory Judgment – all Defendants)**

108.    The allegations in Paragraphs 1 through 107 above are expressly incorporated by reference.

109.    This Court has the power and authority to declare U.S. Bank Trustee and Defendants' rights and legal relations in connection with the Policy.

110.    An actual controversy has arisen between U.S. Bank Trustee, on the one hand, and Defendants, on the other, as to whether the Policy provides coverage to U.S. Bank Trustee for losses caused by the HOA's foreclosure of its purportedly senior lien.

111.    The Policy states that FNTIC insured Lender and its successors, including U.S. Bank Trustee:

against loss or damage sustained by reason of:

1.    The existence at Date of Policy of any of the following:

(a)    Covenants, conditions, or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
…
2.    Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the Insured, provided the violation results in:

(a)    Invalidity, loss of priority, or unenforceability of the lien of the insured mortgage[.]

112.    Additionally, the Policy states that FNTIC insured Lender and its successors, including U.S. Bank Trustee:

against loss or damage sustained by reason of:

. . .

2.     The priority of any lien for charges and assessments at Date of Policy in favor of any association of homeowners which are provided for in any document referred to in Schedule B over the lien fof any insured mortgage identified in Schedule A.

113.     The CC&Rs are identified in Schedule B of the Policy as Exception 2.[43]

114.     The foreclosure of the superpriority portion of the HOA's lien imposed by the CC&Rs would "cut off" and "impair[]" the Deed of Trust.

115.     Thus, as of the Date of Policy, there existed "[c]ovenants, conditions, or restrictions under which the [Deed of Trust]…[could] be divested, subordinated or extinguished or its validity, priority or enforceability impaired."[44]

116.     After the Date of Policy, Borrowers violated their covenant to pay HOA assessments. The CC&Rs states that a homeowner's covenant to pay assessments is an obligation that runs with the Property.[45]

117.     The Borrowers' post-Policy violation of their payment covenant thus constituted a "future violation[] on the land of [the HOA's] covenants, conditions or restrictions," which occurred "prior to the acquisition of title to the" Property by U.S. Bank Trustee.[46]

118.     The foreclosure of that lien purportedly "result[ed] in impairment and loss" of the Deed of Trust.[47]

119.     For these reasons, under Paragraphs 1(a) and 2(a) of Form 100.2 and Paragraph 2 of Form 115.2, the Policy provides coverage for all losses and damages sustained by U.S. Bank Trustee as a result of the HOA's foreclosure sale.

120.     FNTIC, acting at Fidelity's direction, nevertheless denied coverage based on Schedule B Exception 2, which stated that the Policy did not insure against loss or damage which arise by reason of the HOA's CC&Rs, and Exclusion 3(d), which excluded from

---

[43] *See* **Ex. 1** (Title Policy), at 6, Schedule B Part I Exception 2.
[44] *See* **Ex. 1** (Title Policy), at Paragraph 1(a) of Form 100.2.
[45] *See* **Ex. 7** (CC&Rs), at 1 and 15.
[46] *See* **Ex. 1** (Title Policy), at Paragraph 2(a) of Form 100.2.
[47] *See id.*

coverage" any defects, liens, encumbrances, adverse claims, or other matters … attaching or created subsequent to Date of Policy.[48]

121.    When the Policy was issued, it was the intent of U.S. Bank Trustee's predecessor-in-interest and FNTIC that Form 100.2 and Form 115.2 would provide coverage for losses or damages sustained as a result of the CC&Rs.

122.    Contemporary trade usage describing the terms and scope of Form 100.2 and Form 115.2 indicates the endorsement provides coverage for an insured lender for losses and damages sustained as a result of covenants, conditions, and restrictions.

123.    Schedule B Exception 2 and Exclusion 3(d) cannot be interpreted to remove coverage provided by Form 100 and Form 115.2.  *See Nat'l Union Fire Ins. Co. of the State of Pa., Inc. v. Reno's Exec. Air, Inc.*, 100 Nev. 360, 365 (1984) ("Clauses providing coverage are broadly interpreted so as to afford the greatest possible coverage to the insured, [and] clauses excluding coverage are interpreted narrowly against the insurer.").

124.    U.S. Bank Trustee is entitled to a declaration that the Policy provided coverage for all losses or damages, up to the Amount of Insurance, sustained by U.S. Bank Trustee as a result of the HOA's foreclosure sale.

125.    U.S. Bank Trustee is also entitled to a declaration regarding which of the Defendants is the "Insurer" for purposes of providing coverage under the Policy.

126.    U.S. Bank Trustee was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

### SECOND CAUSE OF ACTION
### (Breach of Contract – all Defendants)

127.    The allegations in Paragraphs 1 through 126 above are expressly incorporated by reference.

128.    U.S. Bank Trustee is the insured under the Policy.

129.    U.S. Bank Trustee complied with all material conditions under the Policy.

---

[48] *See* **Ex. 17** (Fidelity's Denial Letter).

130. As described above, FNTIC issued the Policy to U.S. Bank Trustee's predecessor-in-interest, which provides coverage for any loss or damage sustained by U.S. Bank Trustee as a result of covenants, conditions, or restrictions under which the Deed of Trust could "be divested, subordinated or extinguished or its validity, priority or enforceability impaired," or "any future violations on the land of any covenants, conditions, or restrictions" which result in the impairment or loss of the Deed of Trust.

131. The Policy, issued by FNTIC, also provides coverage for any loss or damage sustained by reason of the priority of the HOA's lien provided for in the CC&Rs over the lien of the insured mortgage.

132. The Policy gave rise to a duty to defend U.S. Bank Trustee in any litigation arising from a challenge to the validity or priority of U.S. Bank Trustee's Deed of Trust and to either cure the defects on title or indemnify U.S. Bank Trustee for any losses it sustained as a result of the loss of priority or extinguishment of its Deed of Trust.

133. As described above in Paragraphs 104-107, Defendants are alter egos for the purpose of liability for the handling and denial of U.S. Bank Trustee's claim, or are otherwise engaged in a joint venture.

134. Additionally, because FNTIC entered into a contractual relationship with U.S. Bank Trustee's predecessor-in-interest in order to insure the Deed of Trust in senior position over the HOA's Lien, to the extent coverage is *not afforded* under the Policy, FNTIC breached its contract with U.S. Bank Trustee's predecessor.

135. U.S. Bank Trustee has complied with its material contractual obligations under the Policy.

136. As described above in Paragraphs 81-86, U.S. Bank Trustee has suffered an insured loss or damages under the Policy.

137. FNTIC – acting at Fidelity's direction – breached the Policy by refusing to provide a defense to the Litigation, refusing to indemnify U.S. Bank Trustee for its covered losses, and refusing to attempt to cure the covered title defect.

138.   These breaches of the Policy at Fidelity's direction have proximately resulted in general and special damages to U.S. Bank Trustee, including attorneys' fees and litigation expenses, which U.S. Bank Trustee has incurred and will continue to incur.  Such damages and expenses should be paid by the Insurer under the Policy's terms.

139.   As a result of these breaches of the Policy at Fidelity's direction, U.S. Bank Trustee was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

### THIRD CAUSE OF ACTION
**(Bad Faith / Breach of the Covenant of Good Faith and Fair Dealing – all Defendants)**

140.   The allegations in Paragraphs 1 through 139 above are expressly incorporated by reference.

141.   As described above in Paragraphs 104-107, Defendants are alter egos for the purpose of liability for the handling and denial of U.S. Bank Trustee's claim, or are otherwise engaged in a joint venture.

142.   All Defendants owed U.S. Bank Trustee a duty to act in good faith and in a manner consistent with fair dealing in their considerations of U.S. Bank Trustee's claims under the Policy, including a duty of candor and to avoid denials of claims without reasonable basis.

143.   All Defendants knew that industry materials and expert commentators routinely described the "comprehensive" Form 9/Form 100.2 and Form 5/Form 115.2 endorsements as providing coverage for an insured that suffered a loss as a result of the enforcement of a superpriority lien provided for in an association's covenants, conditions, and restrictions at the time the Policy was issued.

144.   All Defendants knew that their own underwriting manuals, bulletins, and endorsement guides indicated that Form 9/Form 100.2 and Form 5/Form 115.2 provided coverage to an insured that suffered a loss as a result of the enforcement of a superpriority lien provided in an association's covenants, conditions, and restrictions at the time the Policy was issued.

145. In light of the foregoing, and on information and belief, Defendants issued the Policy with the belief that it would provide coverage if the Deed of Trust was impaired or extinguished by the enforcement of the HOA's lien.

146. On information and belief, Defendants knew or had reason to know that U.S. Bank Trustee's predecessor purchased the Policy with the expectation that such coverage would be provided.

147. On information and belief, Defendants knew or had reason to know that U.S. Bank Trustee's predecessor's expectation was reasonable in light of the trade usage and industry standards regarding Form 100.2 and Form 115.2.

148. On information and belief, Defendants knew or had reason to know that the HOA's CC&Rs included a mortgage savings clause, yet represented to the Insured that the CC&Rs did not protect the Deed of Trust from extinguishment by enforcement of the HOA's lien.

149. All Defendants acted with malice, fraud, and/or oppression by allowing U.S. Bank Trustee's predecessor to obtain a title insurance policy that included an endorsement known and described as providing coverage against the enforcement of an association's superpriority lien, then denying coverage for losses arising from the HOA's enforcement of its superpriority lien despite internal documents, guidelines, and bulletins indicating that coverage was due.

150. Defendants have implemented and engaged in patterns and practices which call for the denial of claims stemming from Nevada HOA foreclosure sales despite Defendants' actual knowledge that the claims fell under the insuring provisions and policy endorsements, including U.S. Bank Trustee's Claim. These patterns and practices demonstrate that Defendants did not simply make a reasonable mistake, but engaged in a systemic and reckless and/or intentional practice of mishandling and denying otherwise valid claims in order to avoid their obligations.

151. Defendants intentionally breached their duties and acted in bad faith by denying U.S. Bank Trustee's claims for coverage under the Policy.

152.    U.S. Bank Trustee has suffered damages as a result of Defendants' bad faith and breach of their duty of good faith and fair dealing.

153.    As a result of Defendants' bad faith, U.S. Bank Trustee was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Deceptive Trade Practices (NRS 41.600 and NRS 598.0915) – all Defendants)**

154.    The allegations in Paragraphs 1 through 153 above are expressly incorporated by reference.

155.    As described above in Paragraphs 104-107, Defendants are alter egos for the purpose of liability for the handling and denial of U.S. Bank Trustee's claim, or are otherwise engaged in a joint venture.

156.    All Defendants received valuable consideration in exchange for providing the Policy to U.S. Bank Trustee's predecessor.

157.    All Defendants exchanged memoranda, bulletins, underwriting guides, and other communications indicating that Form 9/Form 100.2 and Form 5/Form 115.2 would provide coverage if an insured mortgage lien was impaired or otherwise affected by the enforcement of an association's superpriority lien.

158.    All Defendants knew that public descriptions of Form 9/Form 100.2 and Form 5/Form 115.2 indicated that coverage would be available if an insured mortgage lien was impaired or otherwise affected by the enforcement of an association's superpriority lien.

159.    Defendants knew the Property was subject to the HOA's CC&Rs.

160.    The Policy U.S. Bank Trustee's predecessor-in-interest obtained from FNTIC contained endorsement language plainly intended to provide coverage in the event the Deed of Trust lost priority or was otherwise impaired by operation of the HOA's CC&Rs.

161.    On information and belief, FNTIC knew or had reason to know that the HOA's CC&Rs did not include a mortgage savings clause, yet represented to the Insured that the CC&Rs did protect the Deed of Trust from extinguishment by enforcement of the HOA's lien.

162.     U.S. Bank Trustee relied to its detriment upon Defendant's representations that Form 100.2 and Form 115.2 would provide such coverage by originating the mortgage loan in reliance on those representations.

163.     U.S. Bank Trustee relied to its detriment upon Defendant's representations that the CC&Rs contained a mortgage savings clause when in fact the CC&Rs via operation of law, provided that the HOA lien was superior to the Deed of Trust.

164.     By representing that Form 100.2 and Form 115.2 provided such coverage at origination, then knowingly misrepresenting that Form 100.2 and Form 115.2 does not provide such coverage to deny U.S. Bank Trustee's claim, Defendants engaged in consumer fraud as that term is defined in NRS 598.0915(5), (15) and NRS 41.600(2)(e) by misrepresenting the quality and characteristics of the Policy furnished to U.S. Bank Trustee's predecessor and making false representations in the transaction.

165.     By representing that Deed of Trust was protected by the mortgage savings clause in the HOA's CC&Rs, then knowingly misrepresenting that Schedule B Exception 7 excludes coverage to deny U.S. Bank Trustee's claim, Defendants engaged in consumer fraud as that term is defined in NRS 598.0915(5), (15) and NRS 41.600(2)(e) by misrepresenting the quality and characteristics of the Policy furnished to U.S. Bank Trustee's predecessor and making false representations in the transaction.

166.     U.S. Bank Trustee has suffered damages as a result of Defendants' consumer fraud, including the damages described above in Paragraphs 81-86.

167.     As a result of Defendants' deceptive practices, U.S. Bank Trustee was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

## **FIFTH CAUSE OF ACTION**
### **(Violation of NRS 686A.310 – all Defendants)**

168.     The allegations in Paragraphs 1 through 167 above are expressly incorporated by reference.

169.   On information and belief, Fidelity's Claims Department handles claims made on policies underwritten by all of its subsidiaries, including FNTIC, and directs the coverage positions to be taken by its subsidiaries to promote consistency in claims handling.

170.   As described above in Paragraphs 104-107, Defendants are alter egos for the purpose of liability for the handling and denial of U.S. Bank Trustee's claim.

171.   All Defendants exchanged memoranda, bulletins, underwriting guides, and other communications indicating that Form 9/Form 100.2 and Form 5/Form 115.2 would provide coverage if an insured mortgage lien was impaired or otherwise affected by the enforcement of an association's superpriority lien.

172.   All Defendants knew that public descriptions of Form 9/Form 100.2 and Form 5/Form 115.2 indicated that coverage would be available if an insured mortgage lien was impaired or otherwise affected by the enforcement of an association's superpriority lien.

173.   Defendants represented to U.S. Bank Trustee that Form 100.2 and Form 115.2 provided coverage in the event that the Deed of Trust lost priority or was otherwise impaired by operation of the HOA's CC&Rs.

174.   Defendants represented to U.S. Bank Trustee that its Deed of Trust was protected by the mortgage savings clause in the HOA's CC&Rs when in fact the CC&Rs provide for an HOA lien that could extinguish a first deed of trust.

175.   U.S. Bank Trustee relied to its detriment upon Defendant's knowing misrepresentations regarding the protection afforded by the CC&Rs.

176.   U.S. Bank Trustee relied to its detriment upon Defendant's knowing misrepresentations regarding the characteristics and scope of coverage provided by the Policy with Form 100.2 and Form 115.2 by originating the mortgage loan in reliance on those misrepresentations.

177.   By representing that Form 100.2 and Form 115.2 provided coverage in the event the Deed of Trust lost priority or was otherwise impaired by operation of the HOA's CC&Rs, and then denying coverage for losses related to the HOA's foreclosure sale, Defendants breached NRS 686A.310(1)(a).

178.     In light of Defendants' knowledge that Form 100.2 and Form 115.2 provided coverage in the event a senior deed of trust was impaired by a Nevada association's superpriority lien, Defendants were required to adopt and implement reasonable claims handling procedures to provide such coverage.  Defendants failed to do so, and instead implemented claims handling procedures that called for the denial of claims under policies with an endorsement Form 100.2 and/or Form 115.2 by insured lenders whose deeds of trust were impaired by Nevada association's liens, in violation of NRS 686A.310(1)(c).

179.     The Insurer's liability under the Policy for the extinguishment of the Deed of Trust was "reasonably clear," as shown by Defendants' internal memoranda, bulletins, underwriting guides, and other communications.  By failing "to effectuate [a] prompt, fair, and equitable settlement[]" of U.S. Bank Trustee's claim, Defendants violated NRS 686A.310(1)(e).

180.     By compelling U.S. Bank Trustee "to institute litigation to recover amounts due under" the Policy, Defendants violated NRS 686A.310(1)(f).

181.     In light of Defendants' internal documents and representations that Form 100.2 and Form 115.2 provided coverage if an insured lien was impaired or otherwise affected by the enforcement of an association's superpriority lien, Defendants' violations of NRS 686A.310 arising for their denial of coverage under the Policy for that exact scenario have been oppressive, willful, and malicious.

182.     Indeed, Defendants implemented patterns and practices which call for the denial of claims stemming from Nevada HOA foreclosure sales, including U.S. Bank Trustee's Claim, despite Defendants' actual knowledge that the claims fell under the insuring provisions and policy endorsements.

183.     As a result of Defendants' deceptive practices, U.S. Bank Trustee was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, U.S. Bank Trustee requests that this Court grant judgment in its favor and against the Defendants, and award U.S. Bank Trustee:

A. a declaration establishing (1) that the Policy provided coverage for all losses or damages, up to the Amount of Insurance, sustained by U.S. Bank Trustee as a result of the HOA's foreclosure sale; and (2) which of Fidelity and FNTIC is responsible for coverage under the Policy;

B. compensatory damages;

C. punitive damages;

D. attorneys' fees;

E. costs; and

F. any other relief deemed to be just.

DATED this __ day of January, 2021.

WRIGHT, FINLAY & ZAK, LLP


_____
Darren T. Brenner, Esq.
Nevada Bar No. 8386
Lindsay D. Robbins, Esq.
Nevada Bar No. 13474
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
*Attorneys for Plaintiff, U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1, Mortgage Pass-Through Certificates, Series 2007-BNC1*